# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

---

| | |
|---|---|
| In Re<br>**1601 W. SUNNYSIDE DR.**<br>**#106, LLC,**<br>                    **Debtor.** | **Bankruptcy Case**<br>**No.  09-41733-JDP** |

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Randal J. French, BAUER & FRENCH, Boise ID, Attorney for Debtor.

Laura E. Burri, RINGERT LAW CHARTERED, Boise ID, Attorney for BAC.

Mary Kimmel, Attorney for U.S. Trustee, Boise ID.

### Introduction

Bank of America ("the Bank"), with its servicing agent BAC Home

Loans Servicing, LP ("BAC"), foreclosed on property owned by 1601 West

Sunnyside Drive No. 106, LLC ("Debtor"), after that company filed its

MEMORANDUM OF DECISION - 1

bankruptcy petition under Chapter 11.[1]  Upon learning of the foreclosure,

and after providing the Bank and BAC (collectively "Creditors") a

reasonable time to respond to notice that they had violated the automatic

stay, Debtor filed a motion in this Court for damages, attorneys' fees, and

costs.  Dkt. No. 43.  Surprisingly, in response to this motion, Creditors took

no steps to reverse the foreclosure sale.  Instead, in its response to Debtor's

motion, BAC disputes Debtor's interest in the property, as well as the stay

violation.  Dkt. No. 60.[2]

    After conducting an evidentiary hearing concerning the motion on

November 3, 2010, and receiving additional briefing by Debtor and BAC,

the Court took the issues under advisement.  Having now considered the

evidence, the record, the parties' submissions, and applicable law, this

Memorandum constitutes the Court's findings of fact and conclusions of

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] The Bank filed no response to Debtor's motion.  The consequences of its
failure to do so are discussed below.

MEMORANDUM OF DECISION - 2

law, and resolves this contest.  Fed. R. Bankr. P. 7052, 9014.

**Facts**[3]

E. James Balarezo ("Balarezo"), who owned several rental properties
in Arizona, purchased the house located at 3500 N. Hayden Rd. #1703,
Scottsdale, AZ ("the Property"), on January 22, 2007.  Ex. B.  Balarezo
borrowed part of the purchase price from Countrywide Home Loans, Inc.,
and granted the lender a deed of trust on the Property to secure the loan.
*Id*.  That deed of trust included a provision which allowed the lender to
demand full payment of the loan if Balarezo transferred the Property
without the lender's prior approval.  *See* Ex. B. at 12, § 18.  At some later
time not clear in the record, the Bank acquired Countrywide's interest in
the loan and deed of trust, and retained BAC to service the loan.

Shortly after acquiring the Property, Balarezo, acting on advice of
counsel, created several limited liability companies, one for each rental
property in his portfolio.  Among these LLCs were Debtor and another

---

[3]  All facts, unless otherwise noted, are drawn from testimony provided at
the November 3, 2010, hearing on Debtor's motion.

MEMORANDUM OF DECISION - 3

known as 1703 Sunrise, LLC.  *See* Exs. 1, 8.  Balarezo was the sole manager

of each of the LLCs.  *See, e.g.*, Ex. 1.  The Property was conveyed from

Balarezo to 1703 Sunrise, LLC, in March 2007.  Ex. 7.  BAC claims that it

was unaware of this transfer.

More than two years later, when payments on the loan became

delinquent, BAC contracted with ReconTrust Company, N.A.

("ReconTrust"), to foreclose on the Property; a trustee's sale was scheduled

for November 12, 2009, referred to in the foreclosure sale notice as TS No.

09-0110672.  Ex. 8.  Two other properties owned by Balarezo-managed

LLCs were also scheduled for foreclosure sales by ReconTrust on behalf of

Creditor in November 2009, TS Nos. 09-0110554 and 09-0121290.  *Id.*

Notices concerning all three sales were sent to Balarezo, the original

borrower under the notes secured by the trust deeds on the properties.  *See

id.*

In anticipation of filing for bankruptcy relief, Balarezo consolidated

the properties held by his various LLCs by transferring all of them to

MEMORANDUM OF DECISION - 4

Debtor.  In particular, the Property was conveyed from 1703 Sunrise, LLC,

to Debtor on November 2, 2009.  Ex. 4.  Debtor filed for chapter 11

bankruptcy relief on November 3, 2009.  Dkt. No. 1.  Both the Bank and

BAC were listed as secured creditors in Debtor's bankruptcy schedules on

account of the loan related to the Property.  Sch. D, Dkt. No. 1.

On November 6, 2009, Debtor sent a fax to ReconTrust, which

specifically referenced the trustee's sale numbers for all three scheduled

ReconTrust foreclosure sales, and included a copy of the notice of Debtor's

chapter 11 filing, together with a copy of Debtor's Schedules A and D, both

of which indicated that the Property was owned by Debtor.  Ex. 8.

Presumably in response to this information, none of the three foreclosures

occurred as scheduled in November 2009.

For some reason not clear in the record, however, Creditors

proceeded with a foreclosure sale on the Property on February 19, 2010.

*See* BAC's Objection to Debtor's Motion at 3, Dkt. No. 60.  At the trustee's

sale, the Property was sold to Federal National Mortgage Association

MEMORANDUM OF DECISION - 5

("Fannie Mae"), which as of the date of the motion hearing remained as the "owner of record" of the Property.  BAC's Supplemental Brief at 4, Dkt. No. 98.  Neither Balarezo nor Debtor were contacted about the rescheduled February 19, 2010, sale before it occurred.  In addition, neither Creditors nor ReconTrust sought or obtained relief from the automatic stay from this Court to conduct the sale.

Eventually, Balarezo became aware of the foreclosure sale.[4]  On May 7, 2010, Debtor's attorney sent Creditors and Fannie Mae a letter setting forth Debtor's position that the Property had been sold in violation of the automatic stay, soliciting an explanation of Creditors' position, and requesting that title to the Property be restored in Debtor to cure the stay violation.  Ex. 10.  After months passed with no cure, Debtor filed its motion in this Court on July 27, 2010, for award of damages for violation of the automatic stay and other relief.  Dkt. No. 53.  In particular, the

---

[4] While not specific in his testimony, Balarezo indicated that he learned of the February 19, 2010, sale "well after the fact."  Debtor requested his bankruptcy counsel's help in remedying the foreclosure sale in May 2010.

MEMORANDUM OF DECISION - 6

motion asked the Court to fine Creditors $100 per day until the sale is

reversed.  Debtor's Brief in Support of Motion at 9, Dkt. No. 54.

After learning of the foreclosure, Debtor remained in possession of

the Property, and rented it to TestMasters for $40 per day for three

months.  TestMasters' representatives also orally committed to Debtor for

an additional 87-day lease of the Property at an increased rate of $45 per

day, which term was to begin upon expiration of its first lease.  In August

2010, during the initial term of the lease, the TestMasters tenant was

reportedly contacted at the Property by parties requesting information

regarding the Property and TestMasters' lease.  As a result of that contact,

and now apprehensive about Debtor's rights to the Property, TestMasters

declined to renew the lease when it expired.  The Property remained

vacant for twelve days before Debtor could secure a new tenant.  In

addition, the new tenant was willing to pay only $33.58 per day for a 45

day lease on the Property.  Debtor therefore claims it should recover

$2,189, the difference between expected rents under the second

MEMORANDUM OF DECISION - 7

TestMasters' lease and the actual rent under the replacement lease, as compensatory damages from Creditors.  Debtor's Closing Argument, Dkt. No. 103.

As of the hearing date, Creditors had taken no action to remedy the alleged stay violation.

## Discussion

### I.    Creditors violated the automatic stay.

Two important legal consequences automatically result from the filing of a bankruptcy petition:  a bankruptcy estate is created, and the petition operates as a stay of acts by creditors to collect debts or foreclose liens.  *See* §§ 362(a), 541(a).

Debtor's bankruptcy estate included all of its legal or equitable interests in property existing at the time its bankruptcy petition was filed.  *See* § 541(a)(1).  Because the Property had been conveyed to Debtor the day prior to filing for bankruptcy, *see* Ex. 4, the Property became property of

MEMORANDUM OF DECISION - 8

the bankruptcy estate on November 3, 2009.[5]

As noted above, the filing of Debtor's bankruptcy petition also operated as an automatic stay prohibiting various acts against the bankruptcy estate and debtor.  *See* § 362(a).  The automatic stay applies to "all entities," and therefore encompasses not only creditors, but also agents retained by creditors to collect debts.  *Id.*  The stay prevents, among other things:  continuation of an action or proceeding against a debtor that was commenced before a bankruptcy case is filed; any act to obtain possession of, or exercise control over, property of the estate; and any act to enforce a lien against property of the estate.  § 362(a)(1), (3), (4).  While a party in interest may obtain relief from the operation of the stay, that relief must be sought via a motion filed in the Bankruptcy Court.  *See* § 362(d);

---

[5] The legal consequences of the filing of Debtor's bankruptcy petition are not impacted by any transfer restrictions in the deed of trust on the Property. While the trust deed gave the lender the option to demand payment-in-full if the Property was transferred without its permission, the trust deed did not prohibit or restrict the Property's conveyance.  *See* Ex. B.  Via Balarezo's deed to 1703 Sunrise, LLC, in March 2007, and 1703 Sunrise, LLC's deed to Debtor on November 2, 2009, effectively transferred ownership of the Property to Debtor.

MEMORANDUM OF DECISION - 9

Rule 4001.

The foreclosure proceedings against the Property were commenced

prior to Debtor's bankruptcy filing.  While discontinued for a time, for

some reason, Creditors proceeded with the foreclosure sale on February

19, 2010, well after Debtors' petition was filed and Creditors' foreclosure

agent, ReconTrust, was notified of that filing.  Creditors did not seek or

obtain relief from the automatic stay before conducting the foreclosure

sale.  The sale constituted not only an act by Creditors to collect a

prebankruptcy debt, but also an act by Creditors to enforce a lien against

property of Debtor's bankruptcy estate, conduct which violated the

automatic stay.[6]

Moreover, a creditor's knowing failure to act to remedy a continuing

stay violation is, itself, a violation of the automatic stay.  *See, e.g., Eskanos &*

---

[6] In addition, any acts taken by Creditors to contact Debtor's tenants
occupying the Property would also violate the automatic stay.  However,
because Debtor's proof concerning the details of this alleged contact was sketchy,
the Court is unable to find that such a stay violation occurred in this case.

MEMORANDUM OF DECISION - 10

*Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213–15 (9th Cir. 2002) (finding that a

creditor did not have to take any additional action for an outstanding

collection action to be a continuation of prebankruptcy action against the

debtor, and a violation of the automatic stay); *California Emp't Dev. Dep't v.*

*Taxel* (*In re Del Mission Ltd.*), 98 F.3d 1147, 1151 (9th Cir. 1996) (holding that

knowing retention of estate property after a stay violation is an "exercise

[of] control" over that property in violation of the stay).

Simply put, in this case, Creditors violated the automatic stay when

they caused the foreclosure sale on the Property to occur after the filing of

Debtor's bankruptcy case, and when they failed to take any action to

reverse that sale when they became aware of the stay violation.

## II.   Debtor may recover damages from Creditors.

The nature and amount of damages recoverable for a violation of the

automatic stay differ depending on whether the party injured by the

violation is an individual, or some other entity.  Entities other than

MEMORANDUM OF DECISION - 11

"individuals,"[7] including corporations, may recover for stay violations

under § 105(a), the Bankruptcy Court's civil contempt and sanctioning

authority, which authorizes the court to "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of

this title." § 105(a); *Knupfer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1189–90,

1196 (9th Cir. 2003).

For a bankruptcy court to find civil contempt, the party requesting

sanctions must show, by clear and convincing evidence, that the other

party violated a specific and definite order of the court. *Id.* at 1190–91

(quoting *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir.

---

[7] An individual injured by a willful stay violation may seek relief under
§ 362(k)(1), which provides for recovery of "actual damages, including costs and
attorneys' fees, and, in appropriate circumstances, . . . punitive damages."
"Individual" in this context does not include corporations or other business
entities. *Johnston Envtl. Corp. v. Knight* (*In re Goodman*), 991 F.2d 613, 618–19 (9th
Cir. 1993) (analyzing "individual" under § 362(k)(1)'s predecessor, § 362(h)).
Because the Debtor is an LLC, it cannot invoke § 362(k)(1) as a remedy for
Creditors' stay violation.

MEMORANDUM OF DECISION - 12

2002)).  The automatic stay is such a specific and definite court order.  *Id.* at

1191.  However, a stay violation must be "willful" to warrant civil

contempt sanctions.  *Id.* (citing *Havelock v. Taxel* (*In re Pace*), 67 F.3d 187,

191 (9th Cir. 1995)).  According to the case law,

> [a] "willful violation" does not require a specific
> intent to violate the automatic stay.  Rather, the
> statute provides for damages upon a finding that
> the defendant knew of the automatic stay and
> that the defendant's actions which violated the
> stay were intentional.

*In re Pace*, 67 F.3d at 191.

Creditors were informed of Debtor's interest in the Property, and

given information about Debtor's bankruptcy filing, at least by November

6, 2009, when Debtor faxed notice of the filing and copies of its bankruptcy

schedules to ReconTrust, Creditors' foreclosure agent.  *See Wiggins v.*

*Peachtree Settlement Funding* (*In re Wiggins*), 273 B.R. 839, 863 (Bankr. D.

Idaho 2001) (holding that a "[creditor] is charged with the knowledge

MEMORANDUM OF DECISION - 13

obtained by its agent.").  But Debtor's fax advising of the bankruptcy filing

was not sufficient alone, in the contempt context, to impose Creditors with

knowledge of the automatic stay.  *Zilog, Inc. v. Corning* (*In re Zilog, Inc.*),

450 F. 3d 996, 1008 (9th Cir. 2006) (discussing *In re Dyer*, 322 F.3d at

1191–92).  Indeed, reluctant to hold an unwitting creditor in contempt,

courts have hesitated finding contempt of the automatic stay without a

creditor's explicit receipt of notice of the stay's existence.  *Id.*  However,

once a creditor is given notice of the stay, that creditor has an affirmative

duty to remedy any stay violation, including violations that occurred prior

to the creditor's becoming aware of the stay.  *See In re Dyer*, 322 F.3d at

1192 (citing *In re Del Mission Ltd.*, 98 F.3d at 1151); *Eskanos & Adler, P.C.*,

309 F.3d at 1213–15.

On May 7, 2009, Debtor's attorney sent Creditors a letter clearly

asserting that Creditors' foreclosure of the Property occurred in violation

of the automatic stay in Debtor's bankruptcy case.  The letter reminded

MEMORANDUM OF DECISION - 14

Creditors that a stay violation, if not remedied, may subject Creditors to

contempt, and allowed Creditors an opportunity to explain why the post-

bankruptcy foreclosure was not a stay violation.  No explanation was

provided, and Creditors did nothing to remedy the violation.  Such a

lackadaisical approach to notice of the stay violation is problematic.  Not

only had the foreclosure sale violated the automatic stay, but Creditors'

apparent election not to remedy that violation constituted a further, willful

violation of the automatic stay subject to civil contempt sanctions under

§ 105(a).  Indeed, because the unremedied stay violation continues to

impair Debtor's interest in the Property even now, Creditors' inaction is

further evidence of their unwillingness to comply with the law.  Debtor

has shown by clear, convincing, undisputed evidence that Creditors

knowingly violated the automatic stay when, after being notified that the

foreclosure sale had occurred in violation of that stay, they took no action

to remedy that violation.  Creditors' conduct justifies the imposition of

MEMORANDUM OF DECISION - 15

sanctions.

**III.    Debtor's remedies.**

        1.    <u>The Foreclosure Sale was Void and Debtor's Title to the
Property Must be Restored.</u>

Creditors are required to remedy their stay violations.  *See In re
Dyer*, 322 F.3d at 1192.  When stay violations occur via property
transactions, such transactions are void.  *See Schwartz v. United States* (*In re
Schwartz*), 954 F.2d 569, 571 (9th Cir. 1992).  Creditors' foreclosure sale was
void under the Bankruptcy Code.  Because they caused Debtor to lose title
to the Property, to remedy their contempt, Creditors must take action to
restore Debtor's title to the Property, subject to any liens and
encumbrances that existed immediately prior to the void foreclosure sale.
*See Williams v. United Inv. Corp.* (*In re Williams*), 124 B.R. 311, 318 (Bankr.
C.D. Cal. 1991).

      BAC argues that Debtor's motion is procedurally insufficient to

MEMORANDUM OF DECISION - 16

restore the Property to Debtor, and that, per Rule 7001, Debtor must

commence an adversary proceeding against Creditors and Fannie Mae

before title to the Property can be ordered restored.  *See* Rule 7001(1)

(indicating that "a proceeding to recover . . . property" is an adversary

proceeding).  But BAC's argument misperceives the nature of this

proceeding.  Debtor's motion does not directly seek to recover its

prebankruptcy title to the Property; the motion asks for an order requiring

Creditors to act to restore its title, and for an award of damages for

Creditors' violation of the automatic stay.  As explained by the BAP,

> Bankruptcy Rule 7001 sets forth ten proceedings
> which are to be filed as an adversary proceeding.
> A sanctions request for willful violation of the
> automatic stay is not included within the Rule
> nor can it be logically implied within Bankruptcy
> Rule 7001 proceedings.

*Fortune & Faal v. Zumbrun* (*In re Zumbrun*), 88 B.R. 250, 252 (9th Cir. BAP

1988) (discussing actions under § 362(k)'s predecessor, § 362(h)).  *See also In*

MEMORANDUM OF DECISION - 17

*re Dunning*, 269 B.R. 357, 367–68 (Bankr. N.D. Ohio 2001) (indicating that

an action seeking to void a post-petition offset of a debtor's bank account

due to violation of the automatic stay was not an action seeking recovery

of money or property, and is not among the proceedings enumerated in

Rule 7001).

Moreover, even when a motion for violation of the automatic stay

seeks to recover money or property, courts have not required an adversary

proceeding.  *See, e.g., In re Dunning*, 269 B.R. at 367–68.  In large part, this is

due to the fact that the Bankruptcy Rules relating to contested matters

incorporate many of the due process protections associated with adversary

proceedings.  Rule 9014(c); *In re Zumbrun*, 88 B.R. at 252; *Dean v. Global Fin.*

*Credit, LLC (In re Dean)*, 359 B.R. 218, 223–24 (Bankr. C.D. Ill. 2006); *In re*

*Forty-Five Fifty-Five, Inc.*, 111 B.R. 920, 922–23 (Bankr. D. Mont. 1990).

In short, BAC's reliance solely on the "recover[y] [of] . . . property"

language of Rule 7001(1) as a defense to Debtor's motion is misguided.

MEMORANDUM OF DECISION - 18

Debtor's utilization of a motion in seeking relief from Creditors' stay

violations via contempt is appropriate, and Creditors' due process rights

have been sufficiently protected by Rule 9014's contested matter

procedures.  On this record, while the Court cannot order Fannie Mae to

redeem the Property to Debtor, the Court is completely comfortable

ordering Creditors to take any actions necessary to restore Debtor's

prebankruptcy title to the Property.

      2.    <u>Debtor Has Not Proved a Right to Compensatory Damages</u>.

Compensatory damages are recoverable by a debtor for a creditor's

stay violation under a § 105(a) civil contempt motion.  *See In re Dyer*, 322

F.3d at 1193 (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th

Cir. 2002)).  "Compensatory damages" include those damages that are

"sufficient in amount to indemnify the injured person for the loss

suffered," essentially placing the injured party in as good a position as it

would have been in absent violation.  *See* BLACK'S LAW DICTIONARY 445

MEMORANDUM OF DECISION - 19

(9th ed. 2009).  In order to recover such damages, the party asserting

compensatory damages must specifically prove not only the right to

damages, but also the amount of damages.  *In re Wiggins*, 273 B.R. at 880.

In proving compensatory damages, the existence and amount of damages

must be based upon more than mere conjecture.  *See Silver Sage Partners,*

*Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 824 (9th Cir. 2001); *McClaran*

*v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996).

      While Balarezo testified at the hearing that TestMasters orally agreed

to enter an additional lease on the Property, the Court was given no

documentation supporting either the existence or amounts of the first or

second leases.  In addition, there was no testimony from TestMasters

witnesses indicating that it planned to enter into another lease for the

Property—all the Court was given was Balarezo's understanding that such

was TestMasters' intention.  Debtor bears the burden of proving

entitlement to compensatory damages, and has not provided adequate

MEMORANDUM OF DECISION - 20

proof of loss of rental income due to Creditors' foreclosure action.

The Court declines to award money damages to Debtor based solely on Balarezo's testimony that TestMasters had orally agreed to re-let the property, but decided not to do so when contacted by others about its possession of the Property.[8]

3.      Debtor May Recover Attorneys' Fees and Costs.

"[A]ttorneys' fees are an appropriate component of a civil contempt award." *In re Dyer*, 322 F.3d at 1195. Costs are also appropriately awarded under § 105(a). *In re Pace*, 67 F.3d at 193. Recoverable attorneys' fees and

---

[8] For what it's worth, even if Debtor had offered evidence from TestMasters that it would have leased the Property for an additional 87 days at $45 a day but for the alleged contact by Creditors' agent, the Court would still decline to award compensatory damages for the 42 days between the end of the replacement lease and the anticipated end of the TestMasters lease. Debtor's claimed loss based on that period is unfounded. The evidence showed that Debtor had control of the Property to lease it to others, and, as of the hearing, no loss had occurred. Honoring Debtor's claim for compensation could potentially result in double payment for that period if Debtor were to find a second replacement tenant.

MEMORANDUM OF DECISION - 21

costs sought as a component of a civil contempt award for a stay violation are limited to the time and effort devoted to remedying the violation.  *See In re Dyer*, 322 F.3d at 1195.

Debtor's attorney has submitted affidavits documenting his services in prosecuting the contempt motion indicating that Debtor has incurred attorneys' fees of $6,135 and costs of $19 in efforts to remedy Creditors' stay violation.  Dkt. Nos. 67, 93, 104.  Creditors have offered no significant objection to the amount sought.  Upon review by the Court, it appears all of the fees and costs claimed are appropriately awarded to Debtor as damages in this case.

4.    <u>Non-Compensatory Damages are Not Appropriate at this Time.</u>

The § 105(a) contempt authority is a civil contempt authority, and only civil sanctions are available.  *In re Dyer*, 322 F.3d at 1192.  Punitive damages are not available.  *Id*. ("We have never authorized punitive (*i.e.*

MEMORANDUM OF DECISION - 22

criminal) sanctions under the contempt authority of § 105(a).").  Punitive

damages have a dual purpose:  punishing conduct and "deter[ring] similar

conduct in the future."  *In re Wiggins*, 273 B.R. at 882.

While, as a general rule, punitive damages are not an appropriate

remedy for § 105(a) contempt proceedings, "relatively mild" non-

compensatory fines may be acceptable in some circumstances.  *In re Dyer*,

322 F.3d at 1193–94 (citing *Zambrano v. Tustin*, 885 F.2d 1473, 1479 (9th Cir.

1989)).  No specific amount has been established to determine when a non-

compensatory fine crosses the threshold from "relatively mild" to

"serious."  What has been made clear, however, is that "Congress has

conferred no power to *punish* for a violation of § 362(a) other than the

punitive damage authority in § 362(h)."  *In re Dyer*, 322 F.3d at 1195

(quoting *Sosne v. Reinert & Duree, P.C.* (*In re Just Brakes Corporate Systems,

Inc.*), 108 F.3d 881, 885 (8th Cir. 1997)) (italics in original).

Often, where "relatively mild" non-compensatory fines have been

MEMORANDUM OF DECISION - 23

allowed, they are narrowly limited to the amount necessary for rule

enforcement.  *See Zambrano*, 885 F.2d at 1479–80 (explaining that

"[w]ithout a narrow sanctions power, district courts might have difficulty

preserving the vitality of local rules against repeated disobedience short of

wielding its greater, less surgical, . . . powers over parties."); *Miranda v. S.*

*Pac. Transp. Co.*, 710 F.2d 516, 519–22 (9th Cir. 1983) (finding a fine of $250

appropriate where the amount was specifically authorized by local rules).

Several guidelines may ensure that non-compensatory fines are

appropriately limited.  *See Zambrano*, 885 F.2d at 1480.  As the Ninth

Circuit has explained,

> First, . . . sanctions must be consistent with the
> Federal Rules and with other statutes.  Second,
> the order must be necessary for the court to
> "carry out the conduct of its business."  There
> must be a close connection between the
> sanctionable conduct and the need to preserve
> the integrity of the court docket or the sanctity of
> the federal rules.  Third, the order must be
> consistent with "principles of right and justice."

MEMORANDUM OF DECISION - 24

> Finally, any sanction imposed must be
> proportionate to the offense and commensurate
> with principles of restraint and dignity inherent
> in judicial power.  This last principle includes a
> responsibility to consider the usefulness of more
> moderate penalties before imposing a monetary
> sanction.

*Id.* (footnotes and citations omitted).

Debtor argues that the Court should impose a $5,000 lump-sum non-compensatory fine against Creditor, which amount is less than other courts have allowed.  The Court, however, finds that, at least at this time, the effect of the requested non-compensatory damages would be strictly to punish Creditor and deter similar conduct.  *See* Debtor's Supplemental Brief at 6, Dkt. No. 90 ("Debtor also requests that the Court impose a non-compensatory fine of $5,000 to deter this kind of conduct from recurring in the future . . . .").  Other sanctions besides non-compensatory fines are available to assist the Court in implementing the policies of the Code in this case; a non-compensatory fine is not necessary to preserve the validity

MEMORANDUM OF DECISION - 25

of the automatic stay, the bankruptcy rules, or the local rules. The Court

recognizes that mild non-compensatory fines are acceptable in some

contempt circumstances, and, if Creditors persist in their determination

not to remedy their stay violations, the argument for such a fine becomes

more persuasive. But, at this time, the Court declines to exercise its

discretion to impose a lump-sum fine against Creditors.

> 5.    A Daily Fine is Appropriate to Coerce Creditors' Compliance with the Automatic Stay.

"Civil penalties must either be compensatory or designed to coerce

compliance." *In re Dyer*, 322 F.3d at 1192 (citing *F.J Hanshaw Enters., Inc. v.

Emerald River Dev., Inc.*, 244 F.3d 1128, 1137–38 (9th Cir. 2001)). A fine is

coercive in nature if a contemnor is able to purge the fine through

compliance with the court's order. *See Int'l Union, United Mine Workers of

Am. v. Bagwell*, 512 U.S. 821, 829–30 (1994); *In re Dyer*, 322 F.3d at 1192.

It is clear from the evidence that, even if Creditors did not know of

MEMORANDUM OF DECISION - 26

Debtor's bankruptcy stay before, they received explicit notification of the

stay in May 2010.  Moreover, even after Debtor filed the contempt motion,

Creditors have chosen to do nothing to undo their illegal acts.  As noted

above, such inactivity itself constitutes a continuing stay violation.

Creditors obviously require additional motivation to act to remedy

their stay violations.  As Debtor suggested, the Court finds that the

imposition of a prospective fine of $100 per day is required to enforce the

stay, and to coerce Creditors to comply with its terms, until such time as

the foreclosure sale is reversed and Debtor's title to the Property is

restored.[9]  If, after thirty days from the date of this Court's order, Creditors

have still not remedied their contempt and paid the coercive fine, the Court

will, upon Debtor's request, consider increasing the amount of the daily

fine and imposing other monetary sanctions to gain Creditors' compliance.

---

[9]  Because this is a coercive fine, it is payable to the Court, not to Debtor.
*See Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1482 (9th Cir. 1992)
citing *General Signal Corp. V. Donallco, Inc.,* 787 F.2d 1376, 1380 (9th Cir. 1986).

MEMORANDUM OF DECISION - 27

**IV.   Bank of America's liability.**

Above, the Court has referred to Creditors collectively in discussing

the stay violations and in designing appropriate relief for Debtor.  Indeed,

Debtor's motion sought damages against both the Bank and BAC, and

both entities were served with the motion and other pleadings.  Dkt. Nos.

53, 54, 55.  Even so, the Bank has neither responded to the motion nor

appeared to defend its conduct.  The evidence clearly shows the "creditor"

in this instance is the Bank, and BAC was acting as a servicing agent of

that creditor.  The Court finds that the Bank was afforded sufficient notice

of, and due process to respond to, the motion.  It apparently chose not to

do so.  The Court therefore presumes the Bank was content to let BAC

carry its water in defense of the motion.  *See Kline v. Deutsche Bank Nat'l*

*Trust Co.* (*In re Kline*), 420 B.R. 541, 548 (Bankr. D.N.M. 2009) (finding

knowledge acquired by an agent is imputed to its principal for purposes of

determining whether a principal's stay violation is willful); *In re Risner*, 317

MEMORANDUM OF DECISION - 28

B.R. 830, 836 (Bankr. D. Idaho 2004) (holding that general principles of agency warrant finding a principal liable for its agent's stay violations). To be clear, on this record, the Court finds the Bank and BAC both violated the automatic stay and are jointly and severally liable for all the sanctions and damages imposed pursuant to this decision.

## Conclusion

Creditors violated the automatic stay when they foreclosed on the Property after Debtor filed for bankruptcy. The foreclosure sale was void. But, while Creditors obviously learned of their stay violation by May 2010, to date they have taken no action to remedy that violation and to restore Debtor's title to the Property. Creditors' ongoing inaction amounts to a continuing, willful violation of a specific court order, and constitutes civil contempt. Per this Court's § 105(a) authority, the Court orders Creditors to take all necessary acts to reverse the foreclosure sale and to restore Debtor's prebankruptcy title to the Property. Moreover, to enforce the

MEMORANDUM OF DECISION - 29

Bankruptcy Code and coerce Creditors to comply with the law, the Court

finds Creditors should be fined $100 per day until Debtor's title to the

Property is properly restored.  Finally, the Court finds Debtor is entitled to

recover from Creditors attorneys' fees of $6,135 and costs of $19 incurred

in securing Creditors' compliance with the automatic stay.

A separate order will be entered.

Dated:  December 30, 2010

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 30